AF Approval ___*JMH*___                    Chief Approval ___*IRM*___

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                CASE NO. 6:23-cr- 27 -
                                         CEM- LHP

DARIUS RODNEY CAPERS

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Roger B. Handberg, United States Attorney for the Middle District of Florida,

and the defendant, Darius Rodney Capers, and the attorney for the defendant,

Thomas D. Sommerville, mutually agree as follows:

### A.   Particularized Terms

1.   Counts Pleading To

The defendant shall enter a plea of guilty to Count One and

Count Two of the Information. Count One charges the defendant with

conspiracy, in violation of 18 U.S.C. § 371. Count Two charges the defendant

with attempted postal robbery, in violation of 18 U.S.C. § 2114(a).

2.   Maximum Penalties

Count One carries a maximum sentence of 5 years'

imprisonment, a fine of up to $250,000, a term of supervised release of not

more than 3 years, and a special assessment of $100.

Defendant's Initials ___

Count Two carries a maximum sentence of 10 years' imprisonment, a fine of up to $250,000, a term of supervised release of not more than 3 years, and a special assessment of $100.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

3.   Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

First:    two or more persons in some way agreed to try to accomplish a shared and unlawful plan;

Second:   the defendant knew the unlawful purpose of the plan and willfully joined in it;

Third:    during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the indictment; and

Fourth:   the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

The elements of Count Two are:

First:    the defendant attempted to intentionally take from the person or the presence of the person described in

Defendant's Initials _X____          2

the information any mail matter or any other property of the United States then in the lawful charge, control or custody of that person;

Second:   the defendant attempted to take the property against the victim's will, by means of force and violence or by means of intimidation.

4.   <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, relating to the charged offenses.

5.   <u>Mandatory Restitution to Victim of Offense of Conviction</u>

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to all of the victim postal carriers and any other victim of the offenses of conviction.

6.   <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties

understand that such a recommendation is not binding on the Court and that,

if it is not accepted by this Court, neither the United States nor the defendant

will be allowed to withdraw from the plea agreement, and the defendant will

not be allowed to withdraw from the plea of guilty.

7.   Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse

information is received suggesting such a recommendation to be unwarranted,

the United States will recommend to the Court that the defendant receive a

two-level downward adjustment for acceptance of responsibility, pursuant to

USSG § 3E1.1(a).  The defendant understands that this recommendation or

request is not binding on the Court, and if not accepted by the Court, the

defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level

prior to operation of subsection (a) is level 16 or greater, and if the defendant

complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea

Agreement, including but not limited to, the timely submission of the financial

affidavit referenced in Paragraph B.5., the United States agrees to file a motion

pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional

level.  The defendant understands that the determination as to whether the

defendant has qualified for a downward adjustment of a third level for

Defendant's Initials _DC_            4

acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 924(d), and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees.

The assets to be forfeited specifically include, but are not limited to, the following: a Glock firearm, seized on January 12, 2023, which was used in the commission of the conspiracy charged in Count One.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging

Defendant's Initials _____          5

instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government.  Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.  The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

Defendant's Initials _____          6

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.

The defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished

Defendant's Initials ___            7

in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. The Defendant expressly consents to the forfeiture of any substitute assets sought by the Government. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that

Defendant's Initials _JC_                    8

determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including satisfaction of any preliminary order of forfeiture for proceeds.

**B.**   **Standard Terms and Conditions**

    1.   <u>Restitution, Special Assessment and Fine</u>

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

Defendant's Initials ⟨signature⟩          9

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities,

Defendant's Initials ____        10

if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

    5.    <u>Financial Disclosures</u>

      Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States

Defendant's Initials  _DC_          11

Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.     Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw

Defendant's Initials _DC_          12

defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

      7.    Defendant's Waiver of Right to Appeal the Sentence

      The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

Defendant's Initials _DC_        13

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation

Defendant's Initials _DC_                14

and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

    11.   <u>Factual Basis</u>

        Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set

Defendant's Initials _DC_           15

forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

    12.   <u>Entire Agreement</u>

        This plea agreement, which includes Exhibit A, constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials  _JC_         16

13.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___7th___ day of March, 2023.

ROGER B. HANDBERG
United States Attorney

_____
Darius Rodney Capers
Defendant

_____
Michael P. Felicetta
Assistant United States Attorney

_____
Thomas D. Sommerville
Attorney for Defendant

_____
Ilianys Rivera Miranda
Assistant United States Attorney
Chief, Criminal Division(North)

Defendant's Initials __DC__                17

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 6:23-cr-

DARIUS RODNEY CAPERS


## PERSONALIZATION OF ELEMENTS

Count One
(Beginning on an unknown date, but not later than on or about September 14, 2022, and continuing through in or about January 11, 2023):

First:      Did you and at least one other person in some way agree to try to accomplish a shared and unlawful plan?

Second:     Did you know the unlawful purpose of the plan and willfully join in it?

Third:      During the conspiracy, did one of the conspirators knowingly engage in at least one overt act as described in the indictment? and

Fourth:     Was the overt act committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy?

Count Two (October 25, 2022):

First:      Did you attempt to intentionally take a United States "arrow key" from K.P., a United States Postal employee?

Second:     Did you attempt to take the property against the victim's will, by means of force and violence or by means of intimidation?


Defendant's Initials           18

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 6:23-cr-

DARIUS RODNEY CAPERS

### FACTUAL BASIS

**A. Conspiracy to Rob a Mail Carrier, Steal a Postal Key, and Steal Mail**

Beginning on an unknown date, but not later than on or about

September 14, 2022, and continuing through in or about January 11, 2023, in

the Middle District of Florida, and elsewhere, CAPERS knowingly and

willfully combined, conspired, confederated and agreed with at least one other

person, to commit offenses against the United States, specifically:

(a)     to rob United States Mail Carriers by force, in violation of 18

U.S.C. § 2114;

(b)     to receive, possess, conceal, and dispose of money and property

that the conspirators knew was obtained as a result of the robbery of the

United States Postal Service mail carrier, in violation of 18 U.S.C. § 2114(b);

(c)     to steal and possess a United States Postal Service "arrow" key

with intent to unlawfully and improperly use the key, in violation of 18 U.S.C.

§ 1704; and

Defendant's Initials           19

(d)     to steal mail matter that was in an authorized depository for mail matter, in violation of 18 U.S.C. § 1708.

Manner and Means of the Conspiracy

The manner and means by which CAPERS and the other conspirators sought to accomplish the objects of the conspiracy included, among others:

It was part of the conspiracy that CAPERS and others acting in concert with him, would and did steal and unlawfully possess a United States Postal Service "arrow" key[1] during the robbery of a United States Postal Service Mail Carrier.

It was further part of the conspiracy that CAPERS, and others acting in concert with him, would and did possess and use a stolen United States Postal Service "arrow" key to open and unlawfully access United States Postal Service mail receptacles and authorized depositories for mail matter.

It was further part of the conspiracy that CAPERS, and others acting in concert with him, would and did steal mail matter, including checks, from United States Postal Service mail receptacles and authorized depositories for mail matter.

It was further part of the conspiracy that CAPERS, and others acting in

---

[1] The arrow key is a universal device which can be used to unlock several different types of mailboxes. The arrow key will fit almost any door or mailbox for the post office at apartments and multi-residential facilities. The parcel key is another type of master key which opens all parcel lockers within a certain area.

Defendant's Initials _DC_                        20

concert with him, would and did wrongfully alter and deposit stolen checks into bank accounts for their own benefit and the benefit of others.

It was further part of the conspiracy that CAPERS and others used a dangerous weapon while committing the robbery.

It was further part of the conspiracy that CAPERS and others jeopardized the life of the United States Postal Service mail carrier while committing the robbery.

It was further part of the conspiracy that a co-conspirator possessed and used the stolen United States Postal Service "arrow" key to open and unlawfully access United States Postal Service mail receptacles and authorized depositories for mail matter.

It was further part of the conspiracy that a co-conspirator stole mail matter, including checks, from United States Postal Service mail receptacles and authorized depositories for mail matter.

It was further part of the conspiracy that co-conspirators wrongfully altered and deposited stolen checks into bank accounts for their own benefit and the benefit of others.

It was further part of the conspiracy that CAPERS and others misrepresented, concealed, hid, and caused to be misrepresented, concealed, and hidden, acts done in furtherance of the conspiracy and the purpose of

Defendant's Initials _DC_                    21

those acts.

Overt Acts of the Conspiracy

In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed in the Middle District of Florida:

On or about September 14, 2022, CAPERS and another accomplice stole a United States Postal Service "arrow" key during the robbery of a United States Postal Service mail carrier near a postal box located at 3191 SW 47th Street, in Fort Lauderdale, Florida, in the Southern District of Florida. CAPERS acted as the lookout and the getaway driver during this robbery.

On or about October 4, 2022, CAPERS and another accomplice stole a United States Postal Service "arrow" key during the robbery of a United States Postal Service mail carrier near a postal box located at 911 North Nowell Street in Orlando, Florida, in the Middle District of Florida. CAPERS acted as the lookout and the getaway driver during this robbery.

On or about October 6, 2022, CAPERS and another accomplice stole a United States Postal Service "arrow" key during the robbery of a United States Postal Service mail carrier near a postal box located at 1400 North Nowell Street in Orlando, Florida, in the Middle District of Florida. During the course of the robbery, the accomplice displayed a firearm in his waistband to the mail

Defendant's Initials __DC__                    22

carrier. CAPERS provided the firearm to his accomplice and acted as the lookout and the getaway driver during this robbery.

On or about October 26, 2022, CAPERS assisted an accomplice at a banking institution in Ocala, Florida, with attempting to deposit a forged check that was stolen from a postal box using a stolen "arrow" key.

On or about January 9, 2023, CAPERS assisted an accomplice with using the "arrow" key stolen on October 6, 2022, to steal mail matter from a United States Postal Service mail receptacle at the Azalea Park Post Office in Orlando, Florida.

## B. <u>Details of the September 14, 2022 Robbery in Ft. Lauderdale</u>

CAPERS and another male (Accomplice-1) agreed with one another to rob P.E., a postal carrier to acquire an arrow key. On September 14, 2022, at approximately 1:20 p.m., P.E. parked her USPS vehicle at SW 47th St, Fort Lauderdale, FL 33312 and was placing mail in a USPS cluster box near 3191 SW 47th St, Fort Lauderdale, FL 33312. At this time, a young black male (Accomplice-1) approached from behind and stated, "excuse me miss, can I have the keys?"

P.E. asked, "what are you talking about?" and Accomplice-1 further stated, "I'm not gonna hurt you, I just want the keys." While demanding the keys, P.E. observed that Accomplice-1 was holding his hand down the front of

Defendant's Initials _____        23

his pants in a manner which led the letter carrier to believe he was holding a handgun. Fearing for her safety, P.E. gave the USPS Arrow Key to Accomplice-1.

After the letter carrier gave the Arrow Key to the robber, P.E. watched as he walked north towards the passenger side door of a Jeep Grand Cherokee driven by CAPERS. As P.E. watched, Accomplice-1 looked back towards her, continuing to imply he was holding a handgun in the front of his pants, which caused P.E. to further fear for her safety and turn away.

Agents recovered surveillance camera footage from around the time of the robbery that depicts the victim's vehicle and CAPERS' vehicle, as the victim described them. Video footage further shows Accomplice-1 returning to CAPERS' Jeep after the robbery. CAPERS admits that he was both a lookout and getaway driver in this robbery.

Broward County Sheriff's Office discovered that CAPERS' Jeep, bearing Florida license plate, 30DANV was seen on traffic cameras and License Plate Readers (LPR) at 1:10 p.m. traveling westbound on Griffin Rd. shortly before the robbery. This location is approximately nine tenths of a mile from and traveling in the direction of where the robbery occurred. Additionally, while he was leaving the area that evening, at approximately

7:40 p.m., CAPERS was issued a seatbelt citation (#AFRNG4E) by the Florida Highway Patrol in Broward County, FL, while driving the Jeep.

### C. Details of the October 4, 2022 Robbery in Orlando

At approximately 3:04 pm USPS employee G.D. pulled up to the community mailbox located at 911 North Nowell Street Orlando, FL to deliver the mail. Shortly after G.D. exited his truck and opened the mailbox, a black male (Accomplice-1) approached him and told him he wanted his key. G.D. told Accomplice-1 "Sure" and laughed, believing it to be a joke. Accomplice-1 told G.D. to give him the key and G.D. again said "Sure, you can have the key" still thinking he was joking. Accomplice-1 told G.D. he was serious, held his hands near the front pocket of his hoodie and shook the pocket up and down. G.D. thought this was to imply Accomplice-1 had a weapon. Accomplice-1 then demanded the key from G.D., and G.D. then realized the suspect wanted the "Arrow Key."

G.D. asked Accomplice-1 "Are you serious?" and Accomplice-1 replied, "Yes, keep your voice down." Accomplice-1 told G.D. he wanted all the keys and to give him the whole key chain. G.D. handed the arrow key and arrow key chain to Accomplice-1, who then turned around and ran south on Nowell Street.

Defendant's Initials _____        25

Surveillance video depicts Accomplice-1 flee West on Berry Street when he entered the passenger side of CAPERS' Jeep Grand Cherokee. The Orange County Sheriff's Office AIM (Analytics Intelligence and Monitoring) unit was able to observe the Jeep Cherokee approach the intersection at Colonial Dr and Paul St. and turn westbound on Colonial Drive. The vehicle then arrived at the intersection of Colonial Dr and Hiawassee Rd where it turned south on Hiawassee Rd, towards the 408 Toll Road at 3:08 pm. The Central Florida Expressway Authority obtained footage of vehicle traveling westbound through the Hiawassee Mainline Toll Plaza. During that time, the Grey Jeep Grand Cherokee passed through that plaza at 3:09 pm, displaying Florida License Plate of 30DANV, with Accomplice-1 inside the vehicle wearing a light color hoodie and a small white square object on the top driver-side windshield. CAPERS admits that he was both a lookout and getaway driver in this robbery.

Law enforcement determined that CAPERS was using phone number 352-812-5772 because he gave that number during two previous encounters with police. A federal search warrant was executed on AT&T for that account which shows that the phone was in or at the area of the robberies on October 4, 2022, October 6, 2022, and October 25, 2022 as more fully described below.

Defendant's Initials _DC_            26

When CAPERS was arrested on January 11, 2023, he had this phone on his person.

### D. Details of the October 6, 2022 Robbery in Orlando

On October 6, 2022, USPS carrier J.B. parked his mail truck in the parking lot at Grace Alive Church, located at 1400 N Nowell Street, Orlando, FL so that he could deliver the mail to the residents' homes around the nearby community. J.B. observed Accomplice-1 sitting in the crouch position in the northeast corner of the church. J.B. explained as he was grabbing mail from his Postal vehicles driver's side, Accomplice-1 walked up to him and ordered him to give up the Arrow Key. J.B. noticed a black firearm in Accomplice-1's right waistband.

J.B. advised as he took his truck vehicle key off the key chain; the suspect told him to "hurry up, there are kids around, I don't want to hurt any kids," so J.B. began to hurry. After J.B. took his truck vehicle key from the keychain; he handed Accomplice-1 the arrow key. J.B. stated Accomplice-1 walked across the street and got into the front passenger side of a dark grey Jeep Grand Cherokee that was parked at the Intersection of Avery Street and Nowell Street. The vehicle then drove away southbound on Nowell Street.

A surveillance video depicts CAPERS' vehicle departing the area from the robbery at 3:59 pm. Law enforcement reviewed LPR cameras and

Defendant's Initials _DL_                    27

discovered that CAPERS' vehicle was observed at Pine Hills Rd and Colonial Dr; Hiawassee Rd and Silver Star Road Orlando, FL prior to the robbery on October 6, 2022. According to "Google Maps" Hiawassee Rd and Silver Star Rd is approximately 2.1miles away from the scene of the robbery. Also, after that robbery, the same vehicle and license plate was captured on another LPR camera at Highway 484 and Marion Oaks Blvd. in Ocala, FL. According to "Google Maps", Highway 484 and Marion Oaks Blvd is approximately 5.2 miles away from CAPERS' residence.

CAPERS admits that he was both a lookout and getaway driver in this robbery, and that he provided Accomplice-1 with a firearm.

## E. Details of the October 25, 2022 Attempted Robbery in Tampa

On October 25, 2022, at approximately 12:55 p.m., USPS Mail Carrier K.P. was delivering mail at the Andover Place at Cross Creek Apartments, located at 10328 Venitia Real Ave, Tampa, FL 33647. While she was delivering mail, she was approached by CAPERS, who told her to give him "that key."

K.P. described the suspect as having a darker complexion and probably a black male, approximately 18 yrs. old to mid-20s, approximately 6' tall, thin, wearing a black face mask with only the eyes cut out. K.P. stated he was wearing a light gray zip up hoodie pulled over his head, black pants, black

Defendant's Initials _DC_                    28

sneakers, "perfect" circle framed sunglasses with reflective lenses. K.P. said the suspect kept his hands in his sweatshirt pockets the entire time, even when the suspect raised his sweatshirt to show K.P. he had a gun in his waistband. According to K.P., she only saw the handle of the gun sticking out of the suspect's waistband and noticed it was army green in color.

During the robbery, K.P. refused to give CAPERS the key, and CAPERS stated, "I don't want to hurt you." K.P. pleaded with him to just let her do her job. K.P. began to get upset and CAPERS stated "Don't get loud. I don't want anybody to hear you. I'll just go. I'll get another mail person. I'll just go for another mail person. Today's not you."

K.P. stated when the suspect left, he got into the driver seat of a dark gray Jeep Cherokee. K.P. further described the Cherokee as possibly a 2018 model, due to the style not being like the older boxier Cherokees. K.P. stated the windows were tinted. According to K.P., the Cherokee had a FL tag she believed the first 3 of plate to be "301" or "30I" and the last 3 were letters, possibly containing an "A" or a "V," which closely resembled the actual plate of CAPERS' vehicle (30DANV).

Law Enforcement later entered CAPERS' license plate number into the same LPR program and discovered that at 2:17 pm, CAPERS' vehicle was

Defendant's Initials _DL_                    29

captured at the intersection of USF Palm Drive and Fletcher Ave Tampa, FL 33613. This location is approximately 22 minutes from the robbery location.

### F. Azalea Park Post Office Mail Theft Incident

On January 9, 2023, law enforcement was tracking CAPERS' vehicle in connection with a court-authorized tracker that was installed on the vehicle. Agents noticed that the vehicle was in the parking lot of the Azalea Park Post Office at approximately 12:54 a.m.

The video surveillance video from the Azalea Park Post Office shows CAPERS' vehicle with a temporary Florida License plate of (DGH522*-last letter unknown) in the parking lot of the Post Office. A suspect leans out of the vehicle's passenger side, and utilizing an arrow key, open the collection box, and begin throwing mail into the vehicle. The vehicle is then seen leaving the area.

### G. Details of CAPERS' Arrest and Search of Vehicle and Residence

On January 11, 2023, a federal search warrant was executed on CAPERS' vehicle, located in the parking lot of 1776 Pembrook Dr. Orlando, FL, an Extended Stay Hotel. A Temporary License Plate (DGH5227) was recovered inside the vehicle. Agents also located ski masks and mail that was stolen from the Azalea Park Post Office collection box, as detailed above.

Defendant's Initials _DC_          30

On January 12, 2023, a search of the hotel room at Extended Stay
Hotel where CAPERS was staying revealed a Glock firearm with an extended
magazine. This is the same firearm used in the commission of the October 6,
2022, robbery described above.

On January 11, 2023, a search warrant was executed at the Residence
of CAPERS located at 5017 SW 97th Place in Ocala, Florida. Several items of
interest were located to include several Debit and/or Credit Cards, Personal
Checks, and a Receipt associated with the deposits of a check. Several firearms
were located inside of the residence, specifically a Ruger .45 caliber handgun
was located under the night stand next to CAPERS' bed. The firearm belongs
to CAPERS' father but was taken by CAPERS without his knowledge. Ski
masks were also located in CAPERS' room.

Defendant's Initials _DC_          31